FILED

2012 Aug-10  PM 12:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **MOLEX COMPANY, LLC, and** )<br>**PACIFIC MINING REAGENTS,** )<br>**LTD.** )<br> )<br> **Plaintiffs,** )<br> )<br>**vs.** )<br> )<br>**CHARLES ANDRESS,** )<br> )<br> **Defendant.** ) | **Civil Action No. 5:12-cv-2098-CLS** |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Molex Company, LLC ("Molex") and Pacific Mining Reagents, Ltd. ("Pacific") originally commenced this action in the Circuit Court of Limestone County, Alabama, asserting claims against defendant Charles Andress, a former consultant for plaintiffs, for a temporary restraining order and injunctive relief to redress violations of the Alabama Trade Secrets Act, Ala. Code § 8-27-1 *et seq.*, monetary damages and permanent injunctive relief under that Act, damages for breach of fiduciary duty, and a declaratory judgment that defendant has an obligation to maintain the confidentiality of and refrain from using plaintiffs' confidential and proprietary information.[1]  Defendant removed the case to this court on June 7, 2012, asserting federal jurisdiction based on satisfaction of the requirements of the diversity

---

[1] *See* Complaint, appended to doc. no. 1 (Notice of Removal).

statute, 28 U.S.C. § 1332.[2]

The case currently is before this court on the following motions: (1) plaintiffs' motion to remand;[3] (2) defendant's motion to dismiss for lack of jurisdiction, improper venue, insufficient form and service of process, failure to state a claim upon which relief can be granted, and, alternatively, motion to transfer venue;[4] (3) defendant's motion to strike Exhibit 1 to plaintiffs' brief in opposition to defendant's motion to dismiss;[5] (4) plaintiff's motion for a lift of stay of discovery and to reset an evidentiary hearing on all pending motions;[6] and (5) plaintiffs' motion to compel discovery.[7]

## I. MOTION TO REMAND

The motion to remand must be considered first, because it addresses this court's subject matter jurisdiction.  Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of*

---

[2] Doc. no. 1 (Notice of Removal).

[3] Doc. no. 7.

[4] Doc. no. 9.

[5] Doc. no. 19.

[6] Doc. no. 26.

[7] Doc. no. 11.

*South Alabama v. The American Tobacco Co*., 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).

Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action. *Ortiz v. Fiberboard Corp*., 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)).

A removing defendant bears the burden of proving that federal jurisdiction exists. *See, e.g.*, *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001)); *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001) ("[T]he burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citing *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).

Further, removal statutes must be construed narrowly, and "all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.,* 264 F.3d 1040, 1050 (11th Cir. 2001) (citing *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994)).

Plaintiffs' argument in support of remand is based solely on the assertion that

the $75,000 statutory amount in controversy has not been satisfied.  *See* 28 U.S.C. §

1332(a) (setting forth the $75,000 minimal jurisdictional amount in controversy).[8]

"When jurisdiction is premised on the diversity of the parties, the district court is

obligated to assure itself that the case involves the requisite amount in controversy."

*Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (citations

omitted).  Further, the court must focus upon the amount that was in controversy *on*

*the date the case was removed from state court.  See, e.g., Burns*, 31 F.3d at 1097

n.13 ("Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the*

*time of removal*.") (emphasis in original) (citations omitted); *see also*, *e.g.*, *Leonard*,

279 F.3d at 972 (same).

        Plaintiffs did not request a specific amount of damages on any of the claims in

their complaint.[9]  Therefore, the removing defendant bears the burden of proving that

the requisite jurisdictional amount was in controversy on the date of removal because,

whenever a plaintiff "fails to specify *the total amount* of damages demanded" in a

state court complaint — either by demanding a specific sum in compensatory

damages, but an indefinite amount as punitive damages, or by not designating any

---

        [8] No party contests that the citizenship of the parties is diverse.  Indeed, plaintiffs state in
their complaint that Molex is an Alabama resident, Pacific is a resident of the Cayman Islands, and
defendant is a Texas resident.  *See* Complaint, at ¶¶ 1-3.

        [9] *See, e.g.,* Complaint, at 10 (plaintiffs request "a judgment in their favor and against
Defendant for compensatory and punitive damages, interest, costs, and attorneys' fees" on their trade
secrets claim); *id.* at 11 (same, for plaintiff's breach of fiduciary duty claim).

amounts at all (*e.g.*, "compensatory and punitive damages in such amounts as the jury may award") — then "a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." *Leonard*, 279 F.3d at 972 (emphasis supplied) (citing *Tapscott*, 77 F.3d at 1356-57 ("[W]here a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement.").

Defendant cannot satisfy his burden through pure speculation, without offering any supporting facts or specific allegations. *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1209, 1215 (11th Cir. 2007). On the other hand, "specific factual allegations establishing jurisdiction and [supporting] them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" *will* suffice. *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 754 (11th Cir. 2010) (bracketed alteration supplied). A removing defendant may offer "a wide range of evidence," including affidavits, depositions, or other "summary judgment-type evidence" to establish the amount in controversy. *Id.* at 754-56.

Most of defendant's arguments in support of satisfaction of the amount in

controversy are either unpersuasive or premised upon inaccurate interpretations of the law.

In his Amended Notice of Removal, defendant makes two statements about the amount in controversy.  First, he states that plaintiffs' complaint "indicates that Plaintiff [sic] seeks monetary relief in excess of $75,000.00 and Defendant herein alleges that the actual amount of damages is in excess of the minimum amount in controversy requirement for diversity jurisdiction pursuant to 28 U.S.C. § 1332."[10] Defendant also

> affirmatively alleges that the damages sought by Plaintiff exceed the $75,000.00 jurisdictional minimum amount of controversy for diversity and alienage jurisdiction.  Plaintiff's "Complaint for Temporary Restraining Order, Preliminary Injunction and Monetary Relief" is attached hereto, and hereby incorporated by reference . . . .  This controversy involves amounts in excess of $100,000.00.[11]

To support that allegation, defendant references paragraph 12 of plaintiffs' complaint, which states:

> Defendant became involved [in] Molex's Frother Product development efforts early on.  Molex needed to test and validate its various prototype formulations to measure their performance in mining applications.  Defendant is a metallurgist with mining experience, who in the 1990's was employed by one of Molex's customers.  Defendant agreed to be a consultant to Molex and, over the years, assisted in the testing verifying and validating the performance of the prototype

---

[10] Doc. no. 2 (Amended Notice of Removal), at 1.

[11] *Id.* at 2 (citations to the complaint omitted).

formulations. *Defendant received in excess of $100,000 in exchange for his consulting services.*[12]

Plaintiffs aptly point out that their allegations in paragraph 12 do not "relate in any way" to the amount of their damages.[13]  Instead, paragraph 12 only alleges that plaintiffs paid defendant a significant sum for his consulting services, a fact that defendant has not disputed.  The amount of defendant's paycheck has nothing to do with how much plaintiffs were harmed by defendant's alleged actions.[14]

In his response to plaintiffs' remand motion, defendant also points to paragraph 8 of plaintiffs' complaint, in which plaintiffs state that they spent "hundreds of thousands of dollars" developing the Frother Products.[15]  Defendant asserts that plaintiffs' development costs are "potentially recoverable" in this lawsuit.[16]  Defendant relies upon the decision of the former Fifth Circuit Court of Appeals in *University Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518 (5th Cir.

---

[12] Complaint, at ¶ 12 (emphasis supplied).

[13] Doc. no. 8 (brief in support of motion to remand), at 9.

[14] The court is not persuaded by defendant's argument that plaintiffs' payment to him of over $100,000 for consulting services, coupled with plaintiffs' offer for an additional $55,000 to sign a confidentiality agreement after he left plaintiffs' employment, indicate that plaintiffs value their trade secrets at at least $155,000.  Plaintiffs paid defendant $100,000 for his services, not necessarily for his confidentiality.

[15] Complaint, at ¶ 8.  Kevin Bennett, Molex's President, also attested to that fact in the affidavit he submitted in support of plaintiffs' motion for a temporary restraining order or preliminary injunction in state court.  *See* doc. no. 5-2, at 22 (Affidavit of Keith Bennett), ¶ 5.

[16] Doc. no. 17 (defendant's response to plaintiff's motion to remand), at ¶ 12.

1974),[17] where the Court stated that the "reasonable royalty" measure of damages in trade secret cases has sometimes "been taken to mean the difference in costs to the defendant of developing the trade secret on his own, using the actual development costs of the plaintiff as the complete measure of damages." *Id.* at 538 (citing *Servo Corp. v. General Electric Co.*, 342 F.2d 993 (4th Cir. 1965), *cert. denied*, 383 U.S. 934 (1966)). However, the former Fifth Circuit's opinion in the *University Computing* case went on to criticize that method because it "simply uses the plaintiff's actual costs, and in our view is frequently inadequate in that it fails to take into account the commercial context in which the misappropriation occurred." *Id.* Based upon those statements, the court does not consider plaintiffs' product development costs to be strong evidence of their trade secret damages.

Finally, defendant argues that the amount in controversy "***must*** " exceed $75,000 because plaintiffs have refused to stipulate that a lower amount is in controversy.[18] That argument also is without merit, because the Eleventh Circuit has clearly held that a plaintiff's refusal to stipulate to the amount in controversy cannot constitute proof that the amount is below the jurisdictional threshold. *See Williams*, 269 F.3d at 1320 ("There are several reasons why a plaintiff would not so stipulate,

---

[17] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[18] Doc. no. 17, at ¶ 21 (emphasis in original); *see also* doc. no. 17, at Exhibit C.

*and a refusal to stipulate standing alone does not satisfy Best Buy's burden of proof*
*on the jurisdictional issue*. Thus, the pleadings are inconclusive as to the amount in
controversy.") (emphasis supplied).

Some of defendant's other arguments, however, are more persuasive.
Defendant asserts that, with regard to plaintiffs' claim for declaratory relief, the
amount in controversy is the "monetary value of the object of the litigation from
[plaintiffs'] perspective." *Weiner v. Tootsie Roll Industries, Inc.,* 412 F. App'x 224,
227 (11th Cir. 2011) (quoting *Federal Mutual Insurance Co. v. McKinnon Motors,*
*LLC*, 329 F.3d 805, 807 (11th Cir.2003); *Cohen*, 204 F.3d at 1077) (internal quotation
marks omitted). According to defendant, the "object of the litigation" is plaintiffs'
Frother Products, and the amount in controversy is, therefore, the value of those
products. The court disagrees with this characterization. The object of the litigation
is defendant's alleged misuse of plaintiffs' trade secrets, and while those trade secrets
may be related to the Frother Products, that does not mean that the value of plaintiffs'
claim is the same as the value of the products themselves. Instead, plaintiffs should
be able to recover an amount sufficient to compensate them for any harm caused by
defendant's alleged actions.

Even though defendant has mischaracterized the nature of plaintiffs' damages,
the evidence he offers in support of his argument still is helpful in determining the

real value of plaintiffs' claims.  Defendant offers evidence that plaintiff Pacific sold

$188,320 worth of the Frother Products to a company called Simplot Phosphates,

LLC ("Simplot") between September 19, 2011 and March 29, 2012, and that Simplot

consistently purchased approximately $300,000 worth of those products from Pacific

each year.[19]  Because plaintiffs have alleged that defendant used their trade secrets to

develop a product to sell to Simplot, and to thereby "steal" Simplot as a client, it is

reasonable to consider the value of plaintiffs' past sales to Simplot in determining

how much defendant's alleged misuse of trade secrets has cost plaintiffs.[20]

Defendant also points to plaintiff's right to damages under the Alabama Trade

Secrets Act itself.  That Act provides, in pertinent part, that "[t]he remedies available

for actual or threatened misappropriation of a trade secret" include, in addition to

"actual damages,"

> [r]ecovery of any profits and other benefits conferred by the
> misappropriation that are attributable to the misappropriation[.]  (In
> establishing the misappropriator's profits, the complainant is required
> to present proof only of the misappropriator's gross revenue, and the
> misappropriator is required to present proof of his or her deductible

---

[19] Doc. no. 17, Exhibit 1 (Affidavit of Charles Andress), at ¶ 4.

[20] Defendant also asserts that he once arranged a sale from a supplier that brought in more than $300,000 for Pacific. *See* doc. no. 17, at ¶ 17.  The court sees no connection between that fact and any damages plaintiffs may have suffered as a result of defendant's alleged misappropriation of trade secrets.  That is true even in light of plaintiffs' request that defendant sign an agreement promising not to disclose any of its suppliers.  There is no allegation that defendant did disclose any suppliers, or that plaintiffs lost any suppliers or customers, or otherwise suffered any economic loss related to suppliers.

expenses and the elements of profit attributable to factors other than the trade secret.).

Ala. Code § 8-27-4(a)(1)(b).   If there is a finding of "willful and malicious misappropriation," the plaintiff also can recover attorney's fees and "[e]xemplary damages in an amount not to exceed the actual award made under subdivision (1), but not less than ten thousand dollars ($10,000)."  Ala Code §§ 8-27-4(a)(2)(c) & 8-27-4(a)(3).[21]

In conclusion, even if the evidence of business lost by plaintiffs as a result of defendant's alleged misuse of trade secrets is the only consideration taken into account, this court finds that it is more likely true than not true that the amount in controversy exceeds $75,000.  Evidence of any profits or other benefits defendant may have received, as well the consideration of potential exemplary damages and attorney's fees, only adds further support to that conclusion.  Accordingly, defendant has satisfied his burden of establishing, by a preponderance of the evidence, that the requirements of diversity jurisdiction have been satisfied.  Plaintiffs' motion for remand is due to be denied.

## II. MOTION TO STRIKE AND MOTION TO DISMISS OR TO TRANSFER VENUE

Defendant moved to dismiss plaintiffs' complaint for lack of personal

---

[21] Plaintiffs have alleged that defendant's misappropriation was "knowing, willful, wanton, malicious and oppressive and warrants the imposition of punitive damages."  Complaint, at ¶ 37.

jurisdiction, failure to state a claim upon which relief can be granted, and insufficient service of process.  He alternatively moved to transfer venue to the United States District Court for the Southern District of Texas, Houston Division.  Defendant also moved to strike a portion of plaintiffs' evidentiary submission.

## A.     Motion to Strike

Defendant asks this court to strike the supplemental affidavit of Keith Bennett, which was filed under seal as "Exhibit 1" to plaintiffs' brief in opposition to defendant's motion to dismiss or motion to transfer venue.[22]  Defendant asserts that the notary seal on the affidavit is defective, that Bennett is a lay witness, that Bennett's allegations are not based upon personal knowledge, that the affidavit sets out facts that are not admissible in evidence, that the affidavit was made in bad faith, and that Bennett's testimony is speculative or conclusory.  Most of defendant's arguments are under-developed and conclusory, and all of them are without merit. Defendant's motion to strike is due to be denied.

## B.     Personal Jurisdiction

Federal Rule of Civil Procedure 12(b) provides, in pertinent part, that a party may assert by motion the defense of lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  The plaintiff asserting jurisdiction over a non-resident defendant has the

---

[22] *See* doc. no. 19 (motion to strike).  Plaintiffs' brief in opposition to defendant's motion to dismiss is doc. no. 16.

burden of establishing a *prima facie* case of personal jurisdiction, which can be done by producing enough evidence to withstand a motion for directed verdict. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citing *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1268-69('11th Cir.2002)).  The court must accept as true all the allegations of the plaintiff's complaint, except to the extent that the defendant presents evidence to contradict those allegations.  If that occurs, then the burden shifts back to plaintiffs to "produce evidence supporting personal jurisdiction." *Stubbs,* 447 F.3d at 1360. When the parties present conflicting evidence, the court must "construe all reasonable inferences in favor of the plaintiff." *Id.*

Alabama's long-arm statute authorizes the exercise of personal jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution; therefore, the traditional two-step personal jurisdiction inquiry of assessing the propriety of jurisdiction under the forum state's long-arm statute, and then determining whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment, collapses into a single step in Alabama. *See, e.g.*, *Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (observing that in Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent

constitutionally permissible"); *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1060 (S.D. Ala. 2007) ("In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment."); *see also Ex parte Unitrin, Inc.*, 920 So. 2d 557, 560 (Ala. 2005) ("Jurisdiction is obtained over out-of-state defendants pursuant to the 'long-arm' rule, Ala. R. Civ. P. 4.2(a)(2)(A)-(I).").

Due process authorizes the exercise of personal jurisdiction over a nonresident defendant when "(1) the nonresident defendant has purposefully established minimum contacts with the forum; [and] (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (citation omitted); *see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (same).

"Furthermore, it is important to remember that *the conduct at issue is that of the defendants*.  No plaintiff can establish jurisdiction over a defendant through his own actions." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000) (emphasis supplied) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Therefore, this court must determine what this defendant did to purposefully avail himself "of the benefits of doing business in Alabama such that the

notions of reasonableness and fairness are not offended by requiring [him] to defend [himself] in an Alabama court." *Id.* (alterations supplied).

Plaintiffs do not appear to assert that there is "general" jurisdiction over defendant in this court. Instead, they assert that this court's jurisdiction over defendant is "specific" to this case. "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *McGow v. McCurry*, 412 F.3d 1207, 1214 n.3 (11th Cir. 2005) (citation omitted). The exercise of personal jurisdiction on a specific jurisdiction theory is proper where a defendant's contacts with the forum state satisfy *all* of the following criteria: (1) they are related or give rise to the plaintiff's cause of action; (2) they involve some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum; and (3) the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there. *See, e.g.*, *Sloss*, 488 F.3d at 925; *McGow*, 412 F.3d at 1214; *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993). That said, the court recognizes that a minimum contacts analysis is "immune to solution by checklist," and that such contacts must be viewed both quantitatively and qualitatively. *Sloss*, 488 F.3d at 925.

In plaintiffs' complaint, they allege that defendant first agreed to serve as a consultant for Molex, an Alabama company, in the 1990s, and he that "assisted in the

testing, verifying and validating the performance of the prototype formulations" since that time.[23]   During the course of providing such consulting services, defendant "regularly worked with Molex's headquarters staff and communicated with them frequently by telephone, facsimile and email."[24]  All records of the confidential and proprietary information that was disclosed to defendant over the years are maintained at Molex's headquarters in Athens, Alabama.[25]   Plaintiffs also allege that Molex created Pacific Mining Reagents, Ltd. in 2010, for the purpose of marketing Molex's products.  Defendant began a consulting relationship with Pacific in 2010, in order to prepare Pacific to market Molex's products under a license.  Defendant became Pacific's business manager in September of 2011, and he was tasked with marketing and selling Molex's Frother Products in the retail market.[26]   While employed by Pacific, defendant regularly placed orders for Frother Products from the Athens, Alabama location of Molex, and he "regularly communicated by telephone, facsimile, and e-mail with Molex's headquarters staff about order placements, order deliveries, new product development opportunities, pricing, billing, invoicing, and other issues."[27]

---

[23] Complaint, at ¶ 12.

[24] *Id.* at ¶ 14.

[25] *Id.* at ¶ 15.

[26] *Id.* at ¶¶ 16-17.

[27] *Id.* at ¶¶ 19.

Plaintiffs bolstered those allegations by submitting the supplemental affidavit of Keith Bennett.[28]  Bennett stated that defendant provided consulting services for Molex for fifteen years.  Specifically, defendant participated in "testing, verifying and validating a specific line of Molex chemical formulations and directing his results back to Molex in Alabama."[29]  Molex paid defendant more than $100,000 for his services over the course of those fifteen years.  Some of the payments defendant received were drawn from an Alabama financial institution.[30]  Bennett also testified that, as a consultant, "Andress was in frequent, at times almost daily, contact by telephone and email with Molex personnel in Alabama.  In the twenty months between January 1, 2009 and August 31, 2010, Andress directed 240 emails to Molex personnel in Alabama."[31]  Defendant's contact with Molex personnel continued after

---

[28] Doc. no. 16, at Exhibit 1 (Supplemental Affidavit of Keith Bennett).  The supplemental affidavit of Keith Bennett was filed under seal and designated as "Confidential – For Attorney's Eyes Only" pursuant to the protective order entered by this court on June 15, 2012.  Doc. no. 10.  Plaintiffs acknowledge that they designated the supplemental affidavit as confidential because of the information contained in the exhibits to the affidavit, not the information contained in the affidavit itself.  *See* doc. no. 25 (plaintiffs' brief in opposition to defendant's motion to strike), at 1-2 ("The exhibits to the Affidavit implicated certain confidential information and trade secrets Molex seeks to protect in this action, specifically raw material sources used in Molex's chemical formulations. Pursuant to the Protective Order entered by this Court (Doc. 10), Plaintiffs designated the Affidavit and accompanying exhibits "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" and filed the documents under seal.") (emphasis in original).  Accordingly, the court concludes it is not improper for it to discuss the affidavit testimony itself on the open record, as long as the confidential information contained in the exhibits to the affidavit is not referenced.

[29] Bennett Supplemental Affidavit, at ¶ 4.

[30] *Id.*

[31] *Id.* at ¶ 5.

-17-

he became a consultant for Pacific, because Pacific is a company that exclusively sells Molex chemical products.  Bennett stated that "[i]n the twelve months between September 1, 2010 and August 31, 2011, Andress directed 297 email messages to Molex personnel in Alabama."[32]  Defendant's contact with Molex employees continued even after he became directly employed by Pacific as a salesperson in September of 2011.  "In the seven months Andress was employed by [Pacific], Andress directed 201 emails to Molex personnel in Alabama."[33]  Bennett represents that defendant's emails addressed "sales and marketing strategies, customer information, samples for customers, specific product formulations to be developed by chemists and engineers at Molex for particular customer[s], and orders for [containers] of Molex products to be manufactured and shipped to customers for field testing."[34]  Additionally, as a consultant for both Molex and Pacific, defendant "frequently requested and received samples of Molex products, which were formulated and produced in Alabama for shipment to Andress."[35]  Also, while he was a consultant for Pacific, defendant routinely sent his expense reports to Molex for review and approval.[36]  Further, Molex stores records of all of its confidential

---

[32] *Id.* at ¶ 6.

[33] *Id.* at ¶ 7 (bracketed alteration supplied).

[34] *Id.* at ¶ 8 (bracketed alterations supplied).

[35] Bennett Supplemental Affidavit, at ¶ 9.

[36] *Id.* at ¶ 10.

information, including formulas, prices, purchasing methods, raw material sources

and prices, and electronic communications, in physical files or electronic servers at

its Athens, Alabama facility.[37]

Defendant has attempted to counter plaintiffs' allegations about his contacts

with the State of Alabama by stating:

> This court does not have specific jurisdiction over defendant because
> defendant did not purposefully direct his activities to Alabama, and
> Plaintiffs' claim did not arise from or relate to defendant's contacts with
> Alabama. Rather, Plaintiffs' claim arose from an offer, initiated by
> Plaintiffs, for Andress to work for a company located in the Grand
> Caymans. Andress never went to Alabama, never signed a contract in
> Alabama, never entered into an agreement in Alabama, never did any
> work in Alabama, and never attempted to get any business from
> Alabama. Plaintiffs sought out Defendant's services and came to
> Houston to meet with him.[38]

These allegations are further supported by Andress's affidavit, in which he states:

> 2. Molex, LLC, and Pacific Mining Reagents ("PMR") are
> Plaintiffs who have filed suit against me. I am a resident of Harris
> County, Texas and domiciled in Texas. I have never been a resident of,
> or been domiciled in the state of Alabama.
>
> 3. I am a provider of consultation services to chemical
> manufacturing companies. Part of the consultation services I offer
> involves the analysis and evaluation of raw materials for use in chemical
> manufacturing. PMR requested that I develop formulas and markets for
> its products used in mining.

---

[37] *Id.* at ¶¶ 11-12.

[38] Doc. no. 9 (defendant's motion to dismiss for lack of personal jurisdiction, improper venue, insufficient form and service of process, failure to state a claim on which relief can be granted, and, alternatively motion to transfer venue), at ¶ 7.

4.      I did not attempt to sell anything related to PMR or Molex, LLC in Alabama.  I was paid for my services by PMR, not Molex, LLC.  This payment was made via wire transfer from the island of Grand Cayman in the Cayman Islands.

5.      My sales efforts could only be directed at the states where I have connections to potential customers of PMR's products including Arizona, New Mexico, or Utah.  I did not attempt to sell PMR's products in Alabama.  I do not have any connections or relationships with any potential customers of PMR's products in Alabama.  I do not know of any potential customers of PMR's products in Alabama.  I do not believe that there are any potential customers of PMR's products in Alabama.

6.      PMR never requested that I attempt to sell any product in Alabama.  My business cards for use in selling PMR's products made no reference to Molex, LLC.   I was issued an email address of candress@pacificmining.net in order to do work for PMR.  My business cards had "PMR," the location in the Cayman Islands, and a number with a Florida Area Code.

7.      Any analysis of raw material at either of Plaintiffs' request would have been performed in Houston, Texas, or Tucson, Arizona.  I never performed any analysis of raw material in Alabama.

8.      I provided services at the ACB mix-facility in Hankamer, Texas, for which I was paid by PMR.

9.      I do not hold or maintain an office in Alabama.  I have never worked in Alabama.  I have never gone to a meeting in Alabama.  I have never attempted to sell a Molex, LLC, or a PMR product in Alabama.  I have never been to Alabama on business.  I do not recall ever having visiting [sic] Alabama at all.

10.      Keith Bennett [the President of Molex] came to visit me in Houston, Texas.  I never had any meetings with him in Alabama.[39]

---

[39] Doc. no. 13 (Affidavit of Charles Andress), at ¶¶ 2-10.

A close examination of plaintiffs' and defendant's respective factual allegations reveals that they are not actually contradictory. Instead, although the parties do not explicitly so state, they seem to disagree more about the scope of the minimum contacts inquiry. Plaintiffs would like the court to examine defendant's contacts with the State of Alabama throughout the entire time he served as a consultant for both Molex *and* Pacific. Defendant, on the other hand, wants the focus to be solely on his contacts with Alabama during the time period when he was actually employed by or consulting for Pacific. The court does not understand how the inquiry can be limited in the manner suggested by defendant. The court acknowledges that only defendant's contacts with Alabama *that are related to the claims asserted in this action* are part of the specific jurisdiction inquiry. However, plaintiffs' substantive allegations of trade secret violations are based on knowledge defendant allegedly gained throughout *all* of his consulting and employment relationships with both Molex and Pacific. Therefore, *all* of defendant's contacts with the State of Alabama related to *all* of those professional relationships are relevant to the personal jurisdiction analysis.

Taking into consideration all of defendant's contacts with the State of Alabama throughout his consulting and employment relationships with Molex and Pacific, the court easily finds that plaintiffs have satisfied their burden of establishing sufficient

"minimum contacts" with the State of Alabama to warrant the exercise of personal jurisdiction over defendant in an Alabama court.  Even though defendant never maintained an office in Alabama, sold to clients in Alabama, or even set foot in Alabama, those types of direct contacts are not necessary to satisfy constitutional concerns. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 858 (1990) ("In our technologically sophisticated world permitting interstate business transactions by mail, wire and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state.") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Defendant purposefully availed himself of the privilege of conducting activities within the State of Alabama by:  performing consulting services for an Alabama company; receiving payment, in part, by funds drawn from an Alabama banking institution; frequently contacting Molex employees in Alabama by telephone, email, and facsimile to discuss the results of the tests he performed; requesting test samples and customer orders of Molex products from the Athens, Alabama office; discussing marketing strategies, customer information, and product formulations with Molex's Alabama staff; and submitting his expense reports to Molex in Alabama.  *See Diamond Crystal Brands v. Food Movers International, Inc.,* 593 F.3d 1249, 1268-69 (11th Cir. 2010) ("Courts have considered a defendant's initiating the contractual

relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the plaintiff for inspection or use in shipping, participating in the manufacturing process, establishing a relationship by placing multiple orders, requiring performance in the forum, negotiating the contract via telefaxes or calls with the plaintiff; the list goes on.") (citations omitted); *Air Products & Controls, Inc. v. Safetech International, Inc.,* 503 F.3d 544, 551-52 (6th Cir. 2007) (finding personal jurisdiction over defendant who contacted the plaintiff in the forum state on several hundred occasions through telephone, email, facsimile, and regular mail to discuss and place orders); *Exhibit Icons, LLC v. XP Companies, LLC,* 609 F. Supp. 2d 1282, 1292-94 (S.D. Fla. 2009) (holding that numerous electronic communications, including 188 telephone calls, directed by the defendant to the forum state were sufficient to establish personal jurisdiction).

Having determined that defendant purposefully availed himself of the privilege of doing business in Alabama, the court next must consider whether the exercise of personal jurisdiction over defendant in an Alabama court would offend the "traditional notions of 'fair play and substantial justice.'" *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (in turn quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))).   In making that inquiry, the court should consider factors

including:  (1) the burden on the defendant from litigating in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (5) and the states' combined interests in furthering fundamental social policies. *Worldwide Volkswagen,* 444 U.S. at 564 (citations omitted).  "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477.

Defendant asserts that being forced to litigate in Alabama would place an undue burden on him because "[n]one of the records, files, or witnesses are located in [Alabama.]"[40]  Defendant did not cite any evidence to support that assertion, and the evidence produced by plaintiffs actually supports a contrary conclusion. According to the supplemental affidavit of Keith Bennett, all of the relevant records, including formulas, pricing information, and sales records, are maintained at Molex's facility in Athens, Alabama.  Furthermore, all of the electronic communications between plaintiffs and defendant are stored on a server in Athens, Alabama.  Finally,

---

[40] Doc. no. 9, at 4.

Bennett stated that most of plaintiffs' witnesses reside in Alabama.[41]  Defendant does not make any substantive arguments with regard to any of the other "fair play and substantial justice" factors; instead, he simply recites the elements and avers that they weigh in his favor.  That is not sufficient to establish that the exercise of personal jurisdiction would be unjust, especially considering that many of the relevant factors weigh favor of maintaining the case in Alabama.  For instance, courts have repeatedly held that states have an interest in providing a forum in which their residents can obtain relief from injuries inflicted by out-of-state actors.  *See, e.g., DocRX, Inc. v. DOX Consulting, LLC,* 738 F. Supp. 2d 1234, 1254 (S.D. Ala. 2010).  Furthermore, litigating in Alabama, plaintiffs' chosen forum, certainly would serve plaintiffs' interests in obtaining convenient and effective relief.  Defendant asserts that litigating in the United States District Court for the Southern District of Texas would better serve the interests of all involved.  The court will address that argument in more detail below, in the context of defendant's alternative motion to transfer venue.  Let it suffice for now to say that all of the factors set forth by the Supreme Court for evaluating whether the exercise of jurisdiction over a defendant offends traditional notions of fair play and substantial justice either weigh in plaintiffs' favor or are neutral.

---

[41] Bennett Supplemental Affidavit, at ¶ 13.

In summary, plaintiffs have established that defendant has constitutionally significant minimum contacts with the State of Alabama, and defendant has not established that the exercise of jurisdiction over him in an Alabama court would offend traditional notions of fair play and substantial justice.   Therefore, it is constitutionally proper for this court to exercise personal jurisdiction over defendant. Defendant's motion to dismiss for lack of personal jurisdiction is due to be denied.

## C.   Insufficient Process and Insufficient Service of Process

Federal Rule of Civil Procedure 12 provides, in pertinent part, that a defendant may raise by motion the defenses of insufficient process and insufficient service of process.   Fed. R. Civ. P. 12(b)(4) & (5).   Defendant asserts that "the Court should dismiss the suit and/or quash the service of process because service by Fedex was inadequate and improper according to the Alabama Rules of Civil Procedure as well as the Federal Rules of Civil Procedure.   Plaintiffs' [sic] attempted to Fedex and email the petition to Andress."[42]   Defendant also states that he "was prejudiced by the defect in process and because the form of the summons is defective, the Court should dismiss the suit or quash the service of process."[43]   Defendant does not provide any explanation for why he believes the summons was defective, and the court cannot

---

[42] Doc. no. 9, at 5, ¶ 12.

[43] *Id.* at 5, ¶ 13.

discern any defect.  Defendant's argument about being served by Federal Express and email is equally unavailing.  Records from the state court reflect that defendant also was served by certified mail, restricted delivery, return receipt requested, which is an adequate form of service under both Alabama and federal law.  *See* Ala. R. Civ. P. 4(i)(2); Fed. R. Civ. P. 4(e)(1).

In summary, defendant's motion to dismiss for insufficient process and insufficient service of process is meritless and even borderline frivolous.  It will be denied.  Defendant's counsel is forewarned, however, that this court does not suffer fools gladly, and if counsel persists in making arguments similar to those addressed in this order, harsh sanctions shall swiftly follow.

## D.    Failure to State a Claim Upon Which Relief Can Be Granted

Defendant next argues that plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citations omitted).  The Supreme Court elaborated this standard in its *Iqbal* opinion,

as follows:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.*, at 557.
>
> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.*, at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed,

be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations.  *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis added).

Defendant first asserts that plaintiffs' complaint contains too many conclusory allegations to satisfy the requirements of the Supreme Court's *Twombly* and *Iqbal* decisions.  That argument, like much else of defendant's attorney's trite contentions, is meritless.  Defendant pulled ten sentences or short paragraphs from plaintiffs' complaint and characterized each one as conclusory.  For the most part, defendant's characterizations are inaccurate, for many of the identified sentences actually do contain factual allegations, even when viewed in isolation.  Some of the other sentences identified by defendant seem conclusory when viewed in isolation, but even a quick review of the complaint itself reveals that those sentences are accompanied by others that provide more factual detail.

-29-

Defendant also asserts that plaintiffs' complaint does not assert a plausible claim for relief because plaintiffs acknowledge that defendant never entered into a non-disclosure agreement with either of them.  That argument is equally meritless, as defendant has cited no authority, and this court knows of none, to support the proposition that a written non-disclosure agreement is a necessary prerequisite to a claim for wrongful disclosure of trade secrets.

In summary, defendant's motion to dismiss for failure to state a claim upon which relief can be granted is due to be denied.

## E.   Venue

In the caption of defendant's motion to dismiss, he states that he is asserting both a motion to dismiss for improper venue *and* a motion to transfer venue.[44]  In the body of the motion, however, defendant does not challenge plaintiffs' choice of venue as improper, but only argues that venue should be transferred to the United States District Court for the Southern District of Texas.  Consequently, the motion to transfer is the only motion that will be addressed by the court.[45]

---

[44] *See* doc. no. 9, at 1 ("Motion to Dismiss for Lack of Personal Jurisdiction, *Improper Venue*, Insufficient Form and Service of Process, Failure to State a Claim on Which Relief Can Be Granted, and, Alternatively *Motion to Transfer Venue*") (emphasis supplied).

[45] It should also be noted that defendant has not asked that the case be dismissed under the closely related common law doctrine of *forum non conveniens*.  *See Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) ("Under the doctrine of *forum non conveniens*, 'when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's

Changes of venue are governed by 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The burden is on the moving party to establish the propriety of a transfer of venue pursuant to § 1404(a).  *See In re Ricoh Corp.*, 870 F.2d 570 (11th Cir. 1989).  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *In re Ricoh Corp.*, 870 F.2d at 572.

"The decision whether to transfer venue is within the discretion of the trial court, and each case should be decided on its particular facts."  *American Aircraft Sales International, Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999) (citations omitted).  Relevant factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

---

convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case.'") (citation omitted).

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citing *Gibbs & Hill, Inc. v. Harbert International, Inc.*, 745 F. Supp. 993, 996 (S.D. N.Y. 1990)). "If the transfer would 'merely shift the inconvenience from one party to the other,' or if the balance of all factors is but slightly in favor of the movant, the plaintiff's choice of venue should be given deference." *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala. 1994) (citations omitted).

The court first must determine whether the case could originally have been brought in the Southern District of Texas, defendant's alternative choice of venue. The federal venue statute provides that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  Defendant resides in Houston, Texas, which is encompassed within Southern District of Texas.  Accordingly, venue would have been proper in the United States District Court for the Southern District of Texas, if the case originally had been brought there.

The next question is whether, considering the balance of all factors, and giving particular weight to plaintiffs' choice of venue in the Northern District of Alabama, transferring the case to the Southern District of Texas would further the convenience of the parties and witnesses and serve the interest of justice.  Defendant offers little more than a conclusory recitation of the relevant factors to support his argument for

transfer.  First he states that "[t]he current forum does not have any meaningful ties to the controversy."[46]  He also states that "[l]itigating the case in this district would force citizens in a community with no connection to the case to serve on the jury."[47]  Those allegations make little sense, given that Molex is an Alabama company with its headquarters in this district, and plaintiffs' claims have been asserted under Alabama law.

Defendant also asserts that when the relative inconveniences of the parties are compared, his inconvenience is greater because he has "no connection to Alabama," while plaintiffs have an office in Texas.[48]  As discussed above, however, plaintiff has constitutionally significant minimum contacts with the State of Alabama, and he has purposefully availed himself of the privilege of doing business in the state.  There is no doubt that defendant, a Texas resident, will suffer *some* inconvenience by having to litigate in Alabama, but given defendant's other contacts with the state, any inconvenience he may suffer is not sufficiently severe to outweigh plaintiffs' choice of forum and the inconvenience plaintiffs would suffer by having to litigate in Texas.

Defendant also asserts that litigating in Texas will be more convenient for his witnesses, who allegedly are unwilling to testify in an Alabama trial and are outside

---

[46] Doc. no. 9, at 9, ¶ 24.

[47] *Id.* at 10, ¶ 30.

[48] *Id.* at 9-10, ¶ 25 ("The current forum is inconvenient for defendant, and plaintiffs will not be inconvenienced by the transfer.").

the subpoena power of this court.[49]  Defendant does not identify any of these alleged witnesses, state where they reside, state how many witnesses will be unavailable, or explain any witness's unwillingness or unavailability to testify.  Without more information, the court cannot conclude that the overall convenience of the witnesses weighs so much in favor of litigating in Texas as to override the plaintiffs' choice of an Alabama forum.  This is especially true considering that plaintiffs have identified several Alabama residents as potential witnesses.[50]

Next, defendant offers the conclusory assertion that "[p]ractical considerations make the trial of this case more efficient and less expensive in the Southern District of Texas."[51]  Once again, defendant does not identify these "practical considerations," and does not offer any further explanation for his assertion.  The court cannot understand how the trial could be more efficiently and cost-effectively conducted in Texas than in Alabama.  As plaintiffs have pointed out, all of their business records are stored in their Athens, Alabama facility, and all of their electronic communications with defendant are stored on a server in Athens, Alabama.

---

[49] *See id.* at 10, ¶ 26 ("A transfer to another district will be more convenient for defendant's key witnesses."), ¶ 27 ("The cost of obtaining the attendance of witnesses will be substantially less in the Southern District of Texas."), ¶ 28 ("Defendant's witnesses are unwilling to testify in the current forum and are beyond compulsory process of this Court. . . .  However, compulsory process for the attendance of the unwilling witnesses is available in the Southern District of Texas.").

[50] *See* doc. no. 16, at 30-31.

[51] Doc. no. 9, at 10, ¶ 29.

Finally, defendant asserts that the "Southern District of Texas is more familiar with the law that will govern the case," because "non-competes are disfavored by public policy in the State of Texas."[52]  This argument, like so many others asserted by defendant's attorneys, is obviously baseless.  This case is not about the violation, or the validity, of a non-compete agreement.[53]  It is about defendant's alleged improper disclosure of plaintiffs' trade secrets.  Even more importantly, the court has no idea why defendant is suggesting that Texas law should apply, because plaintiffs' complaint specifically asserts claims under *Alabama* law.

In summary, the balance of factors weighs in favor of retaining plaintiffs' chosen forum.  Defendant's motion to transfer venue is due to be denied.

## F.    Summary and Cautionary Words for Defendant's Counsel

Defendant's motion to dismiss for lack of subject matter jurisdiction, improper venue, insufficient form and service of process, failure to state a claim on which relief can be granted, and, alternatively, motion to transfer will be denied in its entirety.  As the case will remain with this court, the court finds it appropriate to offer some cautionary words to defendant's counsel.  The court will not be pleased to have its time wasted with any more motions like defendant's motion to dismiss or to transfer

---

[52] Doc. no. 9, at 10, ¶ 31.

[53] Plaintiffs even acknowledged in their complaint that defendant never executed any kind of non-disclosure agreement.  *See* Complaint, at ¶ 22.

-35-

venue, which offered a smattering of undeveloped, conclusory, and borderline frivolous arguments. Any future similar motions may be met with summary denial and/or the imposition of monetary sanctions. Thereafter, contempt proceedings may be considered.

### III. MOTION FOR LIFT OF STAY AND TO RESCHEDULE EVIDENTIARY HEARING AND MOTION TO COMPEL

This court entered an order on June 28, 2012, directing the parties to "proceed to discovery on all matters that may be relevant to plaintiffs' application for preliminary injunctive relief."[54] The court also shortened the response times for all written discovery requests and directed defendant to make himself available for deposition within twenty-one (21) days of the date of the order.[55] On July 18, however, the court ordered that all discovery and deposition pursuant to the June 28 order be stayed pending a ruling by the United States District Court for the Southern District of Texas on a Motion for Protection and Amended Motion for Protection filed by non-party Corsi-Tech.[56] Plaintiffs informed the court on August 6, 2012, that Corsi-Tech withdrew its Motion for Protection from consideration by the United States District Court for the Southern District of Texas, and that court consequently

---

[54] Doc. no. 15, at 1.

[55] *Id.* at 1-2.

[56] Doc. no. 23.

denied the Motion for Protection as moot.[57]

Because the Motion for Protection no longer is at issue in the Texas court, plaintiffs request this court to lift the stay on discovery and reset an evidentiary hearing on the remainder of the pending motions in the case.[58]  The court agrees with plaintiffs that there no longer is any reason for discovery to be stayed.  Therefore, plaintiffs' motion to lift the stay on discovery is due to be granted.  Plaintiffs' motion to compel discovery is likewise due to be granted.

With regard to plaintiffs' request to reset the evidentiary hearing on all remaining pending motions, the court has been able to decide the remainder of the motions addressed in this opinion without the need for additional argument or evidence.  Therefore, plaintiffs' motion to reset an evidentiary hearing on those motions is due to be denied.

### III. CONCLUSION AND ORDERS

In accordance with the foregoing, plaintiffs' motion to remand, defendant's motion to dismiss or to transfer venue, and defendant's motion to strike all are DENIED.  The case will remain in this court, despite the fact that neither party wants

---

[57] *See* doc. no. 27.

[58] *Id.* at 3.  This court originally set an evidentiary hearing on all pending motions, other than plaintiffs' application for preliminary injunctive relief, for July 25, 2012.  *See* text order entered on July 19, 2012.  That hearing was continued on July 20, 2012, and the court indicated that the hearing would be reset by separate order.  *See* text order entered on July 20, 2012.

-37-

it here.

Plaintiffs' motion for lift of the stay on discovery and to reschedule the evidentiary hearing is GRANTED in part and DENIED in part. For the reasons discussed abovbe, the evidentiary hearing will not be rescheduled. However, it is ORDERED that the stay on discovery is lifted, and that the parties must proceed to discovery on all matters that may be relevant to plaintiffs' application for preliminary injunctive relief. Plaintiffs' motion to compel discovery is GRANTED, and defendant is ORDERED to participate in good faith in the discovery process in compliance with the following directives: Response times for all written discovery requests related to the application for preliminary injunctive relief are shortened to seven (7) calendar days. Defendant must make himself available for deposition on all matters related to plaintiffs' request for preliminary injunctive relief within ten (10) days of the date of this order.

The parties are ORDERED to file a joint report, on or before August 20, 2012, addressing the status of defendant's motion for protection from discovery.[59]

A hearing on plaintiffs' motion for preliminary injunctive relief will be reset by separate order.

---

[59] Doc. no. 18.

-38-

DONE this 10th day of August, 2012.

_____
United States District Judge